WESTERN STATES INSURANCE COMPANY, Plaintiff-Appellant, v. LOUIS E. OLIVERO AND ASSOCIATES, Defendants-Appellees.

Third District   No. 3—96—0170

Opinion filed August 29, 1996.—Modified on denial of rehearing October 2, 1996.

Sheryl H. Kuzma (argued), of Myers, Daugherity, Berry & O'Conor, Ltd., of Ottawa, for appellant.

Louis E. Olivero (argued) and Larry E. Sittler (argued), both of Louis E. Olivero & Associates, of Peru, for appellees.

PRESIDING JUSTICE BRESLIN delivered the opinion of the court:

The plaintiff, Western States Insurance Company (Western States), filed the instant case against the defendants, Louis E. Olivero & Associates and David Olivero, alleging that they wrongfully refused to satisfy Western States' claim for subrogation out of the proceeds of a settlement in a personal injury case. The trial court granted the defendants' motion for summary judgment. We hold that Western States was entitled to receive the amount of its subrogation claim from the proceeds of the settlement and that the defendants' failure to honor the subrogation claim amounted to a conversion of Western States' property. Accordingly, we reverse the court's order and grant summary judgment in favor of Western States.

Western States provided automobile insurance to Gaylon and Judy Irvin. After an automobile accident involving the Irvins and Sharon Gualandi, the Irvins retained the defendants to recover damages from Gualandi. The Irvins settled their claims for a total of $20,000. Under Western States' insurance policy with the Irvins, Western States had a subrogation interest in the suit because it had paid for medical treatment received by the Irvins.

Before the settlement checks were issued, the Irvins executed a release which provided that they would satisfy all liens and claims against the settlement, including Western States' claim for medical payments. The settlement checks were made payable to, among others, the Irvins, Louis E. Olivero & Associates, and Western States. The defendants sent these checks to Western States for its endorsement. The letter which accompanied the checks provided that the defendants agreed to reimburse Western States in the amount of $2,005.20, and that a check would be forwarded as soon as the settlement checks cleared. Western States endorsed the checks and returned them to the defendants' office with a demand for payment of $2,005.20.

The defendants cashed the settlement checks and deposited the proceeds into a trust account. The checks cleared the bank on May 4, 1995, but the defendants never paid Western States its share of the proceeds. Then, on May 28, 1995, the Irvins informed David Olivero of their intent to file a bankruptcy petition. On June 1, the Irvins' bankruptcy attorney contacted Olivero and advised him not to disburse any of the settlement proceeds because the proceeds were property of the bankruptcy estate. Nevertheless, on the following day, the defendants disposed of the settlement proceeds by retaining $9,022.99 in attorney fees and costs and disbursing the remaining $10,977.01 to the Irvins. The Irvins did not file their bankruptcy petition until June 20.

In its complaint, Western States alleged, among other things, that the defendants had converted Western States' funds. Both parties filed motions for summary judgment. In granting summary judgment for the defendants, the trial court found that the conversion claim failed because the Irvins maintained control of the settlement proceeds. This appeal followed.

We will confine our discussion in this opinion to whether the trial court erred by granting summary judgment for the defendants on Western States' conversion claim and by denying Western States' motion for summary judgment.

■ When parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to

decide the issues based on the record. *Andrews v. Cramer*, 256 Ill. App. 3d 766, 769, 629 N.E.2d 133, 135 (1993). On appeal from the entry of summary judgment, the standard of review is *de novo*. *Andrews*, 256 Ill. App. 3d at 769, 629 N.E.2d at 135.

■ To prevail on a conversion claim, a plaintiff must establish that (1) it has a right to the property; (2) it has an absolute and unconditional right to the immediate possession of the property; (3) it made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over its property. *Springfield Rare Coin Galleries, Inc. v. Mileham*, 250 Ill. App. 3d 922, 620 N.E.2d 479 (1993). Retention of property after a valid demand for its return constitutes conversion. *Harry W. Kuhn, Inc. v. State Farm Mutual Automobile Insurance Co.*, 201 Ill. App. 3d 395, 559 N.E.2d 45 (1990).

■ In the instant case, the Irvins executed a release which provided that they would satisfy Western States' claim and the Irvins' insurance policy gave Western States the right to recover its medical payments from the personal injury settlement. Moreover, Western States was a named payee on the settlement checks and the defendants promised to pay Western States its share of the settlement amount as soon as the checks cleared the bank. Under these facts, Western States established that it had a right to its share of the proceeds and an absolute and unconditional right to the immediate possession of those proceeds after the checks cleared the bank. Western States made a demand for its share of the proceeds, but the defendants failed to comply with this demand after the checks had cleared. Because it is clear from the undisputed facts that the defendants were authorized to hold Western States' share of the proceeds only until the checks cleared, the defendants' retention of the proceeds constituted a conversion.

The defendants excuse their actions, however, based upon the rule of professional conduct requiring attorneys to hold all property subject to a dispute (see 134 Ill. 2d Rs. 1.15(a), (c)). They also argue that they could only dispose of the Irvins' funds if directed to do so by them.

Before the settlement checks cleared, the defendants and the Irvins had recognized their obligation to honor Western States' subrogation claim. Therefore, the fact that Western States was entitled to receive $2,005.20 from the proceeds of the settlement checks was not subject to any dispute. In addition, under the Illinois Rules of Professional Conduct, the defendants had an affirmative duty to disburse Western States' share of the settlement proceeds. See 134 Ill. 2d R. 1.15(b). Accordingly, we reject the defendants' argu-

ment that the rules of professional conduct limited their duty to return Western States' share of the settlement proceeds.

■ The defendants also argue that Western States forfeited its right to pursue the subrogation claim by failing to attend a creditors meeting with the Irvins' bankruptcy trustee. They maintain that the amount owed to Western States was a debt which was discharged by the bankruptcy court. We disagree.

The filing of a bankruptcy petition creates an estate comprised of all property in which the debtor has a legal or equitable interest. See 11 U.S.C. § 541(a) (1994). An insurer with a valid subrogation claim has an equitable right to a portion of the debtor's recovery from a third-party tortfeasor, and the amount of the recovery that represents the costs expended by the insurer does not become part of the debtor's bankruptcy estate. *In re Squyres*, 172 Bankr. 592, 595 (C.D. Ill. 1994). Since both the Irvins and the defendants had previously recognized their obligation to honor Western States' subrogation claim and Western States was a named payee on the settlement checks, the Irvins had no right or interest in Western States' share of the settlement proceeds. Thus, Western States' share of the proceeds did not become part of the Irvins' bankruptcy estate and Western States was not obligated to attend the creditors meeting. In addition, Western States' subrogation claim was not a debt of the Irvins that could be discharged by the bankruptcy court. See *In re Squyres*, 172 Bankr. 592, 595 (C.D. Ill. 1994).

Moreover, as discussed above, the defendants' failure to return Western States' share of the settlement proceeds after the checks cleared amounted to a conversion of Western States' funds. This conversion occurred before the bankruptcy petition was filed and before the creditors meeting took place. The defendants have cited no authority to support the proposition that their liability to Western States was affected by Western States' failure to attend the creditors meeting or the discharge of the Irvins' debts by the bankruptcy court. Thus, while we recognize that Western States subsequently forfeited its right to recover the amount of its subrogation claim from the Irvins (see *Taylor v. Freeland & Kronz*, 503 U.S. 638, 118 L. Ed. 2d 280, 112 S. Ct. 1644 (1992)), it did not forfeit its right to assert a conversion claim against the defendants.

While we recognize that the defendants could have mistakenly believed that they were required to turn over Western States' share of the settlement proceeds to the Irvins, this mistake does not relieve the defendants of their liability to Western States. Attorneys are well advised to proceed cautiously whenever a client files a bankruptcy petition. However, an attorney is liable to a third party if he

wrongfully releases that party's funds to his client. Accordingly, we hold that the defendants' liability to Western States was not vitiated by Western States' failure to attend the creditors meeting or by the discharge of the Irvins' debts by the bankruptcy court.

Because we reverse the trial court's judgment and grant summary judgment in favor of Western States, we need not address the additional grounds for reversal raised by Western States.

For the foregoing reasons, the judgment of the circuit court of La Salle County is reversed, and summary judgment is entered in favor of Western States.

Reversed.

HOLDRIDGE, P.J., and McCUSKEY, J., concur.