**In re Roger John WHITE, Jr., Lisa Michelle White, Debtors.**

**No. 00–12137.**

United States Bankruptcy Court, D. Kansas.

Aug. 25, 2003.

---

Boyd W. Howard, Wichita, KS, for Debtors.

J. Michael Morris, Klenda, Mitchell, Austerman & Zuercher, L.L.C., Wichita, KS, trustee.

### MEMORANDUM OPINION

ROBERT E. NUGENT, Chief Judge.

This matter comes before the Court on the chapter 7 trustee's notice of intended compromise and settlement of debtor Roger White's state court personal injury case pursuant to Fed. R. Bankr.P. 9019(a). Farm Bureau Mutual Insurance Company, Inc. ("Farm Bureau"), the debtor's automobile liability insurer, objects to the settlement and asserts a claim to the postpetition settlement in the amount of $8,616.67 for repayment of personal injury protection ("PIP") benefits paid to White prepetition. Farm Bureau claims a statutory PIP lien under Kan. Stat. Ann. § 40–3113a(b) (2000) of the Kansas Automobile Injury Reparations Act.[1] Farm Bureau also asserts a subrogation claim to the settlement proceeds. The Court has jurisdiction over this contested matter.[2]

#### Statement of Facts

This matter was submitted on stipulated facts.[3] The debtor Roger White

---

1. Kan. Stat. Ann. § 40–3101 *et seq.* (2000).

2. 28 U.S.C. § 1334 and § 157(a) and (b)(2)(K).

3. Dkt. 47.

("White") was injured in a two car accident with Cassie Goldwater ("Goldwater") on November 29, 1999. At the time of the accident, White was insured under an automobile insurance policy issued by Farm Bureau that contained personal injury protection ("PIP") coverage as required by the Kansas Automobile Injury Reparations Act.[4] Farm Bureau paid a total of $8,616.67 in PIP benefits from December 1999 to April 2000.[5] White filed chapter 7 bankruptcy on June 7, 2000. On November 28, 2001 White filed a personal injury lawsuit in state court against the alleged tortfeasor, Goldwater, and her insurer, arising from the car accident. On July 1, 2002, the trustee filed a notice of intended settlement, seeking approval of a proposed $10,900 settlement of the state court personal injury action.[6] Farm Bureau timely objected, asserting its PIP lien and right to repayment of the PIP benefits from the settlement proceeds.[7] On August 15, 2002, the Court approved the settlement subject to a later determination of Farm Bureau's claimed interest in the settlement proceeds arising from its payment of PIP benefits.[8] The trustee and Farm Bureau have briefed the matter and the Court is now prepared to rule.[9]

### Analysis

This case presents a factual scenario virtually identical to that which this Court addressed in *Veazey*.[10] The debtor's auto-mobile insurer (Farm Bureau) asserts a PIP lien against the postpetition settlement of the debtor's personal injury case and seeks to recover a share of the settlement proceeds. The facts in *Veazey* are virtually indistinguishable from the facts here. Farm Bureau argues that this Court wrongly decided *Veazey* and advances arguments in addition to those made by the PIP carrier in *Veazey*.

### Procedural Posture and Jurisdiction

While this is undeniably a core proceeding of which this Court has jurisdiction,[11] actions to determine the relative interests of parties in property of the estate are generally brought as adversary proceedings governed by Fed. R. Bankr.P. 7001. This controversy arises in the context of a contested matter—whether the trustee should retain the settlement proceeds and distribute them to the debtor's unsecured creditors or whether a portion of the proceeds should be remitted to Farm Bureau on account of its PIP claim. Even though there is no pending adversary proceeding and Farm Bureau has not been subjected to service of process per se, the Court finds that Farm Bureau has been given notice of the trustee's motion under Fed. R. Bankr.P. 9014 which requires that notice of a contested matter be served as process pursuant to Fed. R. Bankr.P. 7004 and that Farm Bureau has

---

4. KAN. STAT. ANN. § 40–3107(f) (2000).

5. According to the stipulations, Farm Bureau made one *postpetition* PIP payment of $54 on 4/13/01. *See* Dkt. 47, ¶ 3. However, Farm Bureau concedes in its briefing that *all* PIP benefits were paid to debtor prepetition. *See* Dkt. 38, p. 3. The Court therefore concludes that the date of the $54 payment referenced must be a typographical error. For its analysis, the Court will consider the PIP payments as all being made prepetition.

6. Dkt. 23.

7. Dkt. 24.

8. Dkt. 26.

9. Dkt. 24, 37, 38 and 46.

10. *Nazar v. Allstate Insurance Company, et al. (In re Veazey)*, 272 B.R. 486 (Bankr.D.Kan. 2002).

11. 28 U.S.C. § 157(b)(2)(B) and (K).

essentially conceded this Court's jurisdiction of this controversy.

### Review of In re Veazey

In *Veazey*, this Court read KAN. STAT. ANN. § 40–3113a(b), the source of the insurer's statutory PIP lien, to state that the PIP lien does not arise and attach until there is a "recovery" from the tortfeasor. The Court rejected the insurer's argument that its PIP lien attached when the insurer paid the prepetition PIP benefits. The insurer defended its PIP lien as one whose attachment "relates back" as a matter of law under an exception to the automatic stay, 11 U.S.C. § 362(b)(3) and § 546(b)(1)(A).[12] This Court held that the attachment of a PIP lien violates the automatic stay where the insured-debtor obtains a postpetition recovery from the tortfeasor.[13] This Court concluded that the plain language of Kansas' PIP lien statute affords the insurer no prepetition interest in any future recovery obtained by the debtor. There is no language in Kansas' PIP lien statute providing that the insurer's PIP lien relates back to the date that PIP benefits were paid by the insurer. Because the insurer's PIP lien did not arise prepetition and its lien was ineffective against interests acquired prior to attachment and perfection of the PIP lien, the insurer in *Veazey* had no interest in the settlement proceeds held by the trustee.

### Farm Bureau's Automobile Insurance Policy Language

■ Nothing in this Court's review of the Farm Bureau insurance policy changes the result in *Veazey*. The language in Farm Bureau's insurance policy is similar to the statutory language of KAN. STAT. ANN. 40–3113a. Part B of the insurance policy describes the personal injury protection coverage that Farm Bureau is required by Kansas statute to provide.[14] In the PIP coverage section titled "Our Right to Recover Our Payments," the policy language expressly states that Farm Bureau's rights are subject to the "Personal Injury Protection Coverage Act or the law of appropriate jurisdiction." Thus, the policy language must be read with the PIP lien statute and where inconsistent with the statute, the statute controls.[15]

As the Court reads the policy language in Part B and Kansas' statute, Farm Bureau acquires two distinct interests when providing PIP benefits: (1) it acquires a subrogation claim; and (2) it acquires a PIP lien in any duplicate recovery obtained by the insured.[16] The right of subrogation permits the insurer to intervene and protect its PIP lien in an action brought by the insured against the tortfeasor.[17] Moreover, if no action is brought by the insured within 18 months of the accident, a statutory assignment of the insured's tort action is effected, whereby the insurer itself may bring the action against the tortfeasor to recover the PIP benefits it has paid.[18] *Where there has been a*

---

12. All statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.* unless otherwise specified.

13. 11 U.S.C. § 362(a)(4).

14. KAN. STAT. ANN. § 40–3107(f).

15. *See also* KAN. STAT. ANN. § 40–3107(g) where insurance policy "shall be construed to obligate the insurer to meet all the mandatory requirements and obligations of this act."

16. KAN. STAT. ANN. § 40–3113a(b).

17. KAN. STAT. ANN. § 40–3113a(b). *See Foveaux v. Smith*, 17 Kan.App.2d 685, 691, 843 P.2d 283 (1992) (recognizing insurer's right to intervene in insured's action against tortfeasor).

18. KAN. STAT. ANN. § 40–3113a(c). In the instant case, there is nothing in the record indicating that Farm Bureau intervened in the insured's lawsuit or brought its own ac-

*recovery by the insured,* the insurer's PIP lien arises and attaches to the recovery to the extent the recovery is duplicative of the PIP benefits paid.[19] The policy provides that "the insured *who recovers* from the party legally liable for the bodily injury shall repay us the amount of our payments which are duplicated .... We have a lien to the extent of the amount due us." Thus, both the policy language *and* the PIP statute clearly contemplate the existence of a *recovery* before a PIP lien arises.

Part F of Farm Bureau's insurance policy is the section entitled "General Provisions." The subsection titled "Our Recovery Rights," reserves a general right of subrogation in the insurer. This section states, in pertinent part:

> In the event of any *payment under this policy,* we are entitled to all the *rights of recovery* of the person to whom payment was made against another. That person must ..., do whatever else is necessary to help us exercise those rights and do nothing after loss to prejudice our rights.

> When a person has been paid *damages* by us under this policy *and also recovers from another,* the amount recovered from the other shall be held by that person in trust for us and reimbursed to us to the extent of our payment. [Emphasis added.][20]

This language appears to condition the insurer's subrogation right upon a recovery. Moreover, the insurer's statutory PIP lien authorized under § 40–3113a(b) is referenced only in the insurance policy's section pertaining to PIP coverage. It clearly arises only where there has been a recovery. To the extent a subrogation claim exists for duplicative PIP benefits paid to the insured, the subrogation provisions in Part B pertaining to PIP coverage control, not the general policy provisions in Part F. The language in the general subrogation clause provides that amounts recovered by the insured are held in trust for the insurer. This language is absent from the PIP coverage section.

Farm Bureau has not persuaded the Court that it misconstrued the statutory PIP lien conferred by KAN. STAT. ANN. § 40–3113a(b). The Court adheres to its previous opinion in *Veazey* insofar as it pertain to Kansas' statutory PIP lien. The insurer in *Veazey* did not argue its general right of subrogation as a basis for entitlement to the settlement proceeds but relied solely upon its PIP lien. Here, Farm Bureau also relies on a right of subrogation. The Court will therefore address the additional arguments presented by Farm Bureau in this case.

■ Farm Bureau principally cites to three decisions from other jurisdictions in support of its position. It does not rely on the statutory PIP lien, but upon its general right of subrogation.[21] In support of its

---

tion against Goldwater, even though it could have done so since 18 months had passed since the date of the car accident.

**19.** KAN. STAT. ANN. § 40–3113a(b).

**20.** Farm Bureau makes no claim that it has paid "damages" within the contemplation of this policy provision and general subrogation right; it only asserts the payment of PIP benefits.

**21.** The type of subrogation asserted here is not clearly articulated by Farm Bureau. In general, there are two types of subrogation: (1) conventional subrogation, which arises by contract or agreement; and (2) legal or equitable subrogation, which arises by operation of law and is a creature of equity. *See Bankers Trust Co. v. United States,* 29 Kan.App.2d 215, 218, 25 P.3d 877 (2001). A third type of subrogation—statutory subrogation, arises by operation of a statute. *See Millers Nat. Ins. Co. v. City of Milwaukee,* 184 Wis.2d 155, 516

position, Farm Bureau cites an Illinois bankruptcy court decision *In re Squyres*,[22] an Illinois state court decision, *Western States Insurance Co. v. Louis E. Olivero & Assoc.*,[23] and an unpublished Idaho bankruptcy court decision, *In re Hiatt*.[24] None of these decisions involve Kansas' PIP statute, the statutory PIP lien, or the statutory right of subrogation arising thereunder, and all are distinguishable from the matter at hand.

*Squyres* involved a general subrogation clause in an insurance contract and not a statutory subrogation claim as presented in the instant case. Citing general insurance law, the Illinois bankruptcy court held that the insurer held an equitable interest in a portion of the settlement proceeds by virtue of its subrogation right and that the insured held the settlement funds in trust for the insurer. Because the insured-debtor had no equitable interest in the settlement proceeds covering insurance benefits paid by the insurer, that portion of the settlement proceeds never became property of the estate. Thus, the insurer was entitled to recover from the settlement the medical expenses it had paid.

Like *Squyres*, *Hiatt* also involved an insurer's right of subrogation under a contractual general subrogation clause. The subrogation clause provided that the insured held amounts recovered by the insured from others in trust for the insurer to the extent of the insurer's payments under the policy.

In *Western States Insurance*, the Illinois appellate court held that the failure to honor an insurer's subrogation claim from a settlement constituted conversion of the insurer's property. That case did not involve a postpetition recovery from the tortfeasor. The settlement in that case occurred prior to the insured-debtor's bankruptcy filing. The insured acknowledged prepetition the insurer's subrogation claim. Even the conversion of the settlement proceeds occurred prepetition. On those facts, *Western States* is inapposite here.

The authorities cited by Farm Bureau are neither controlling nor persuasive and are factually distinguishable. None of Farm Bureau's cases involved a statutory right of subrogation under a PIP statute. Farm Bureau relies upon these cases for the proposition that it holds an equitable interest in the settlement proceeds by virtue of an insurer's general right of subrogation. Farm Bureau states in its brief:

> Nothing can be said then but to presume that an insurer's right to recover upon any recovery by its insured arises upon payment by the insurer to the insured. As such, an insurer holds a right of subrogation from the time it makes its payments under the coverage, which constitutes an equitable interest in any recovery by the insured.[25]

---

N.W.2d 376 (1994) (subrogation available under statute depends upon particular construction given to the terms of the statutory provision). In the context of PIP benefits, Kansas grants an insurer the statutory right of subrogation. *See* KAN. STAT. ANN. § 40–3113a(b); *Yunghans v. Carson*, 9 Kan.App.2d 45, 47, 670 P.2d 928 (1983) (Kansas PIP statute 40–3113a(b) is a statutory subrogation provision). As further noted, *supra*, Farm Bureau has a contractual subrogation claim under its policy of insurance under both Part B (the PIP coverage) and Part F (general subrogation

rights). *See* Exhibit A attached to the parties' Stipulations, Dkt. 47.

**22.** 172 B.R. 592 (Bankr.C.D.Ill.1994).

**23.** 283 Ill.App.3d 307, 218 Ill.Dec. 836, 670 N.E.2d 333 (1996).

**24.** 2000 WL 33712218 (Bankr.D.Idaho June 30, 2000)

**25.** *See* Dkt. 24 at p. 8.

This broad statement may *generally* be the case, but it fails to recognize the distinction between statutory PIP subrogation and contractual or equitable subrogation.

In this Court's view, the question in this case is what is the nature of the insurer's statutory subrogation right and when does that right arise under Kansas' PIP statute. The language of § 40–3113a(b) which confers both the PIP lien and right of subrogation answers the question. *Both* the lien and subrogation are conditioned upon there being a recovery. Section 40–3113a(b) is prefaced with the following language:

> *In the event of recovery* from such tortfeasor by the injured person ... by judgment, settlement or otherwise, the insurer or self-insurer *shall be subrogated* to the extent of duplicative personal injury protection benefits ... *and shall have a lien* therefor against such recovery ... (Emphasis added).

This statutory language only establishes Farm Bureau's PIP subrogation claim after a recovery by the insured.

Although no Kansas case has considered the relative priority of a trustee's and an insurer's interest in a PIP recovery, one Kansas case considering another PIP issue clearly holds that the subrogation and lien rights accorded by § 40–3113a(b) arise after the insured's recovery, not before. In *Nitchals v. Williams*[26] (a case cited by neither party here), the Kansas Supreme Court was asked to construe a 1977 amendment to the PIP statute authorizing apportionment of attorney fees between the insured and the insurer and to determine whether that provision applied prospectively or retrospectively.[27] The 1977 amendment was enacted in response to a prior Kansas Supreme Court decision, *Easom v. Farmers Insurance Co.*[28] wherein the court concluded that an insured recovering against a tortfeasor must bear the costs and attorney fees of the litigation prompting the recovery while the PIP carrier is entitled to full reimbursement of PIP benefits without bearing a proportionate share of the expense. When this amendment was enacted, numerous personal injury claims were pending for injuries suffered prior to the July 1, 1977 effective date. Controversy arose over the issue of whether the amendment should apply to claims arising out of those injuries which occurred pre-enactment. The Kansas court concluded that subsection (e) of the PIP statute authorizing apportionment of attorney fees was procedural or remedial in nature and would be applied retrospectively *unless* retrospective application would impair vested substantive rights of the insurer.[29] Thus, the court had to address when the substantive legal right—the PIP subrogation right—arose under § 40–3113a(b):

> The answer to this question must depend on the point in time when the right of the insurance carrier to "reimbursement" under the old statute, or to "subrogation" under the new statute, accrued or became a vested right. The insurance companies take the position that the right of a PIP carrier to reimbursement or subrogation under the statute becomes fixed or vested either on (1) the date the policy was issued, (2) the date the insured suffered personal injuries, or (3) the date the PIP carrier paid the insured PIP benefits. We have analyzed both the old and new statutes and

---

**26.**  225 Kan. 285, 590 P.2d 582 (1979).

**27.**  § 40–3113a(e).

**28.**  221 Kan. 415, 560 P.2d 117 (1977).

**29.**  225 Kan. at 291–92, 590 P.2d 582.

have concluded that in each of them *the PIP carrier's right to reimbursement or subrogation accrues or becomes vested only after a recovery by the insured from the third-party tortfeasor by judgment, settlement, or otherwise.... It is obvious that no right of reimbursement accrues to the insurance carrier simply because an injury has occurred or PIP benefits are paid. Clearly the event which brings into existence the PIP carrier's right of reimbursement is the recovery of damages by the insured. The same conclusion must be reached from the language used in the new statute, K.S.A.1977 Supp. 40–3113a.* Under the new statute, *the right of the PIP carrier to subrogation arises only "in the event of recovery from such tortfeasor by the injured person."* [30]

The Kansas Supreme Court held that retrospective application of the attorney fees provision in the PIP statute did not impair the insurer's right of subrogation where the insured's recovery against the tortfeasor occurred after the effective date of the statute, July 1, 1977, even though PIP benefits had been paid prior to July 1, 1977. [31]

Thus, under Kansas law, Farm Bureau's statutory PIP subrogation claim is a substantive legal right that does *not* accrue or vest upon the insurer's payment of PIP benefits to the insured as Farm Bureau contends. Instead, under *Nitchals, supra,* and the plain language of the PIP statute, an insurer's statutory right of subrogation for PIP benefits accrues or vests only when there has been a recovery by the insured. [32] Therefore, Farm Bureau did not possess a prepetition PIP subrogation claim.

### *Section 541(d) Argument*

■ Section 541 defines what is included in property of the bankruptcy estate. The estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." [33] An accrued cause of action belonging to the debtor at the commencement of the bankruptcy case is property of the estate. [34] However, § 541(d) provides that property in which the debtor holds only legal title, and not an equitable interest, as of the commencement of the bankruptcy case, becomes property of the bankruptcy estate only to the extent of legal title to such property. [35] The property in which debtor has no equitable interest does not become property of the estate. Bankruptcy courts decide questions concerning the nature and extent of a debtor or estate's property interests based on state law. [36]

■ Citing *Squyres* and *Hiatt,* Farm Bureau contends that § 541(d) excludes its PIP subrogation claim from property of

---

**30.** *Id.* at 294, 590 P.2d 582 (Emphasis added.).

**31.** *See also Anderson v. National Carriers, Inc.,* 240 Kan. 101, 104–05, 727 P.2d 899 (1986) (holding that no statutory subrogation right was available under workers' compensation provision until there was a recovery).

**32.** This conclusion makes common sense as well. The lien and subrogation right conferred by § 40–3113a(b) is only granted to the extent the recovery is duplicative of PIP benefits paid by the insurer. There can be no duplication if there has been no recovery.

**33.** § 541(a)(1).

**34.** *See In re Smith,* 293 B.R. 786 (Bankr. D.Kan.2003).

**35.** § 541(d).

**36.** *See Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *In re Ogden,* 314 F.3d 1190 (10th Cir.2002) (citing *Butner).*

the estate. It reasons that debtor had only legal title to the settlement proceeds resulting from its state court action, but no equitable interest in the settlement proceeds to the extent they constitute PIP benefits paid by Farm Bureau. Farm Bureau claims an equitable interest in the settlement proceeds by virtue of its subrogation rights.

While this argument might well be persuasive were the subrogation claim based upon equitable considerations or on a contractual clause granting the insurer a *prerecovery* interest in the insured's cause of action, it is of no avail in this case. Per the discussion in the preceding section, Farm Bureau's subrogation claim had not accrued at the time the bankruptcy case was filed because the insured had not yet obtained a settlement of the state court action. Debtor's interest, and Farm Bureau's subrogation right therein only arose post-petition. Farm Bureau had no equitable interest in White's cause of action or settlement at the commencement of the bankruptcy case and § 541(d) affords Farm Bureau no basis to exclude the settlement (to the extent of PIP benefits paid) from the estate under Kansas law.

### *Constructive Trust Argument*

■ Citing to *Squyres, supra,* Farm Bureau argues that the settlement funds should be held in constructive trust to the extent of the PIP benefits paid by Farm Bureau. The constructive trust theory in *Squyres* is predicated upon the existence of a prepetition equitable interest in the insured's settlement or recovery. Moreover, the equitable interest in *Squyres* in

premised upon a general subrogation clause in the insurance policy, not upon a state statute. The policy in *Squyres* provided:

OUR RIGHT TO RECOVER PAYMENT.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.[37]

The court concluded in *Squyres* that this subrogation clause created the insurer's equitable interest in a portion of the settlement and the insurer's portion of the settlement was therefore not property of the estate. *Squyres* only refers to a general right of subrogation, not to a subrogation right defined by statute as in this case. *Squyres* is simply not persuasive under the facts of this case.[38]

■■■■ The concept of constructive trusts in bankruptcy was addressed by Judge John T. Flannagan of this Court in *In re Leitner.*[39] Judge Flannagan described the typical situation in which a constructive trust is imposed:

Under state constructive trust law generally, if a wrongdoer obtains property by fraud or other improper means, a court can impose a constructive trust to protect the injured party. The constructive trust is a legal fiction that adopts the analogy of a trust and declares that a beneficiary owns an equitable interest in property. The construc-

---

**37.** 172 B.R. at 593. A similar general subrogation clause is contained in Farm Bureau's insurance policy in the instant case. *See* Dkt. 47, Ex. A at Part F, p. 12.

**38.** This Court notes that the contract in *Squyres'* only establishes the "trust" obli-

gation when "the person to or for whom payment is made *recovers damages* from another...." This Court questions how a trust created by contract can be "constructive."

**39.** 236 B.R. 420 (Bankr.D.Kan.1999).

tive trust imposes a duty on the trustee to hold the equitable property interest in trust for its owner, the beneficiary.[40] There is no allegation of fraud and wrongdoing on the part of the debtor-insured in this case. Likewise, there is nothing in the record to suggest that White concealed his state court action or settlement from Farm Bureau.

■■■ This Court has carefully reviewed *In re Omegas Group, Inc.,*[41] the Sixth Circuit case cited by the trustee in response to Farm Bureau's constructive trust argument, and does not find it to be particularly helpful either.[42] *Omegas* does not arise in the context of a statutory subrogation claim. However, a comment made in *Omegas* concerning constructive trusts is pertinent here:

> ... [A] claim filed in bankruptcy court asserting rights to certain assets "held" in "constructive trust" for the claimant is nothing more than that: a claim. Unless a court has already impressed a constructive trust upon certain assets or *a legislature has created a specific statutory right to have particular kinds of funds held as if in trust,* the claimant cannot properly represent to the bankruptcy court that he was, at the time of the commencement of the case, a beneficiary of a constructive trust held by the debtor. (Emphasis added.)[43]

Here, the Karisas PIP statute does not impress a trust on any recovery obtained by the insured; it grants a lien and a right of subrogation. In addition, the statute expressly defines the point in time when the insurer's lien or subrogation interest comes into existence—upon recovery.

■■■ Furthermore, a constructive trust is a remedy.[44] In § 40–3113a(b), the Kansas Legislature has defined the scope of a PIP insurer's interest in PIP benefits that it has paid and has granted insurers rights and remedies to protect that interest. It is not for federal courts to enlarge upon rights and remedies established by the legislature or to alter the priorities and distribution scheme established by the Bankruptcy Code. Although the result is admittedly a harsh one for PIP insurers, neither state law nor the Bankruptcy Code permit this Court to exclude from the bankruptcy estate the portion of the settlement representing PIP benefits paid by Farm Bureau.

Finally, Farm Bureau's constructive trust argument must fail for the same reason as noted in *In re Faita.*[45] The record before this Court is inadequate to conclude that a portion of the $10,900 settlement was earmarked for PIP benefits paid by Farm Bureau. Allowing Farm Bureau's claim to the settlement would give it priority over other unsecured creditors that is simply not provided for by the Bankruptcy Code.[46]

### Conclusion

Farm Bureau did not have a prepetition equitable interest in the settlement funds

---

**40.** *Id.* at 424.

**41.** *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.),* 16 F.3d 1443 (6th Cir.1994).

**42.** One bankruptcy court from this district has noted the criticism of the Sixth Circuit's decision in *Omegas Group. See In re Leitner, supra* at 423–24.

**43.** *Id.* at 1449.

**44.** *Id.* at 1451.

**45.** 164 B.R. 6, 11–12 (Bankr.D.Conn.1994).

**46.** *See also, In re Omegas Group, Inc., supra* at 1452–53 (permitting a creditor to "lop off" a piece of the estate under a constructive trust theory is to permit that creditor to circumvent the Bankruptcy Code's equitable system of distribution).

by virtue of the prepetition PIP benefits paid to the insured. Under KAN. STAT. ANN. § 40–3113a(b) Farm Bureau's PIP lien and its subrogation claim did not arise until there was a recovery. Since there was no prepetition recovery, Farm Bureau had no equitable interest in the settlement funds as of commencement of the bankruptcy. Accordingly, the debtor's recovery is property of the estate. Lastly, this Court concludes that the facts of this case do not warrant the imposition of a constructive trust on White's recovery.

Farm Bureau's objection to the settlement is overruled. The settlement amount is property of the estate.