TURNER INVESTORS, a Partnership d/b/a Moline Gymnastics and Dance Academy, Plaintiff-Appellant and Cross-Appellee, v. SHARON PIRKL *et al.*, Defendants-Appellees (David Van Acker, Defendant-Appellee and Cross-Appellant).

Third District No. 3—02—0210

Opinion filed April 15, 2003.

William R. Stengel, Jr. (argued), and Kimberly N. Fuller, both of Coyle, Gilman & Stengel, of Rock Island, for appellant.

Francis Van Hooreweghe (argued), of Van Hooreweghe & Fackel, of Moline, for appellee Sharon Pirkl.

John F. Doak (argued) and Andrew M. Rink, both of Katz, Huntoon & Fieweger, P.C., of Rock Island, for appellee David Van Acker.

PRESIDING JUSTICE McDADE delivered the opinion of the court:

Plaintiff, Turner Investors, appeals from an entry of summary judgment against it in an action for conversion of business funds. Defendant David Van Acker cross-appeals from the trial court's denial of his motion for sanctions and motion to deem facts admitted. We affirm.

## FACTS

On May 18, 1999, plaintiff filed a complaint against defendants, Sharon Pirkl and David Van Acker. In its complaint, plaintiff alleged, among other things, that defendants had converted plaintiff's funds. Plaintiff specifically alleged that defendants had wrongfully exerted control over the plaintiff's business accounts by improperly distributing funds to the themselves.

Subsequent discovery revealed that plaintiff owned certain real estate located in Moline, Illinois, and operated a gymnastics business on a portion of that real estate. The gymnastics business, Moline Gymnastics and Dance Academy (the Academy), offered instructional training as well as competitive gymnastics. Pirkl served as manager of the Academy and Van Acker as a gymnastics coach.

The Academy maintained two commercial bank accounts. Funds designated for gymnastics competitions were deposited in the "competition account." Other funds and proceeds were deposited in the "general account." In her capacity as the business manager, Pirkl was responsible for the payment of business expenses and the disbursement of paychecks to Academy employees. Pirkl also consistently deducted and disbursed bonuses from the Academy's gross annual income. The bonus pool equaled the amount by which the

Academy's pretax income exceeded its operating expenses. This method of determining and paying bonuses was pursuant to an arrangement adopted by the parties.

In April of 1999, plaintiff entered into a contract with Lisa and Allen Miskowiec to sell the Academy and the real estate on which it was located. Prior to that time, defendants had made several unsuccessful attempts to purchase the real estate and the Academy. Plaintiff informed defendants of the pending sale one week prior to its closing. On April 29, 1999, four days before the closing, Pirkl authorized Van Acker to disburse the funds held in the competition account. Van Acker then wrote 16 checks totaling $960 to the parents of Academy's gymnastics team members. On that same day, Pirkl withdrew funds from the general account and distributed them as bonus checks. The funds were divided equally between Pirkl and Van Acker, each receiving $9,950. These withdrawals and disbursements brought both accounts close to a zero balance.

Van Acker testified in his deposition that the funds in the competition account did not belong to the Academy:

"[T]he money that was there [competition account] actually belonged to the clientele, because it was an escrow account. That money was used to take care of coaching expenses, to go to meets, them [the parents] doing that versus using a booster club.

So instead of that group fund-raising money, they put money into that account to be used for that purpose, and so since we knew that the season was going to be—the competitive season was over, this amount was there, and we decided to give it back to them because it was their money."

When asked about the partnership's interest in the competition account, one of plaintiff's partners, Donald Carothers, testified at his deposition as follows:

"Q. And with regard to the competition account, did you have any conversation with any of the investors about the account?

A. No

Q. Did you deliver those accounts to Bruce Peterson?

A. Yes.

Q. Did you make any comment to him with regard to whether that money belonged to the individuals that put the money into the accounts?

A. Not really because he knew about that particular account. That wasn't our money or Turner's money or anything else. That belonged to the people.

Q. How was it that you believed that Bruce Peterson knew that the money in the competition account belonged to the people who put the money in as opposed to the Turner Investors Group?

A. He was involved in it as much as I was.

Q. So you think it was pretty clear to the Turner Investors at least to you and to Bruce Peterson, that the competition account money did not belong to the Turner Investor Group?

A. True. I believe that."

On September 27, 2000, plaintiff filed its second amended complaint, alleging breach of fiduciary duty and conversion. In response to this complaint, defendants filed a motion for summary judgment on all counts. On June 18, 2001, Judge Ronald C. Taber, who presided over the case, granted defendants' summary judgment motion without making any factual findings.

Pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137), defendant Van Acker filed a motion for sanctions against plaintiff and its counsel on July 16, 2001. Defendant Van Acker also filed a motion seeking to deem allegations contained in his requests for admission Nos. 2 and 3 admitted.

Defendant Van Acker's first request for admissions, filed in January of 2002, sought admission of the following:

"2. William Stengel reviewed and/or approved a provision in said sales agreement which specifically included the sale of the 'Competition' account with all other cash accounts.

3. Statements made by Don Carothers, in his May 3, 2000 deposition testimony that the money in the competition account did not belong to Turner Investors Group was and is accurate."

In its response to the request for admissions, plaintiff replied, in relevant parts:

"2. Plaintiff declines to answer this request as the question is in the alternative.

3. Plaintiff declines to answer this request as the quest is unclear as to whether Don Carothers made such statements; or, if Don Carothers made the statements, were the statements accurate."

Before ruling on these motions, Judge Taber retired. For the first time, Judge Mark A. Vandewiele presided over the case. On February 19, 2002, Judge Vandewiele held a hearing on defendants' motions. On March 1, 2002, the court denied the motion for sanctions, finding that "[p]laintiff had a good faith basis to initiate and proceed with the litigation and that [p]laintiff acted reasonably and in good faith under the circumstances." In addition, the trial court's written order, entered on the same day, denied defendant Van Acker's motion to deem facts admitted. Judge Vandewiele specifically found that "plaintiff did object to Requests for Admission Nos. 2 and 3, and gave grounds why plaintiff could not truthfully answer the Requests."

Plaintiff now appeals the order granting summary judgment, and

defendant Van Acker cross-appeals the denial of his motion for sanctions and motion to deem facts admitted.

## ANALYSIS

### I. Summary Judgment

First, we examine whether the trial court erred in granting defendants' motion for summary judgment.

■ In Illinois, summary judgment is governed by the provisions of section 2—1005 of the Code of Civil Procedure. 735 ILCS 5/2—1005 (West 1994). Under section 2—1005(c), a party is entitled to summary judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1994). Because summary judgment is a drastic method of terminating litigation, the movant's entitlement must be free from doubt. *Logan v. Old Enterprise Farms, Ltd.*, 139 Ill. 2d 229, 564 N.E.2d 778 (1990). Accordingly, the reviewing court must construe the evidence strictly against the movant and liberally in favor of the nonmoving party. *Logan*, 139 Ill. 2d at 234. And where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 586 N.E.2d 1211 (1992). In appeals from summary judgment rulings, we conduct a *de novo* review. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 607 N.E.2d 1204 (1992).

Although far from clearly stated, it seems the gist of plaintiff's first argument is that the trial court erred in granting summary judgment because factual questions exist regarding whether defendants converted its funds. Defendants argue they were entitled to summary judgment as a matter of law because plaintiff failed to establish an element of its claim for conversion. *In re Estate of Albergo*, 275 Ill. App. 3d 439, 446, 656 N.E.2d 97 (1995).

■ A conversion is any unauthorized act that deprives a person of his or her or its property permanently or for an indefinite time. *Colonial Funding, L.L.C. v. American Empire Surplus Lines Insurance Co.*, 308 Ill. App. 3d 376, 719 N.E.2d 1098 (1999). To establish a conversion claim, a plaintiff must establish that (1) it has a right to the property; (2) it has an absolute and unconditional right to the immediate possession of the property; (3) it made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over its property. *Cirrincione v. Johnson*, 184 Ill. 2d 109, 703 N.E.2d 67 (1998), citing *Western States Insurance Co. v. Louis E. Olivero & Associates*, 283 Ill. App. 3d 307, 310, 670 N.E.2d 333 (1996).

■ In the present case, plaintiff has failed to provide sufficient facts to show that it has a right to the disbursed funds. Plaintiff also does not contend that his right to possession, if established, was absolute and unconditional. Moreover, Carothers admits in his deposition that the funds in the competition account did not belong to the Academy. Plaintiff further admits that defendant's method of determining and paying bonuses was pursuant to an arrangement adopted by the parties. There is nothing in the record which shows that plaintiff told defendants or its accountant that the arrangement had been modified or terminated.

Accordingly, we hold that the trial court did not err in entering a summary judgment in favor of defendants with respect to plaintiff's conversion claim.

## II. Motion for Sanctions

■ Next, we examine whether the trial court abused its discretion in denying Van Acker's motion for sanctions. In his cross-appeal, Van Acker claims that plaintiff's claims were based upon unsupported allegations of fact. Van Acker first argues that Judge VandeWiele's decision to deny sanctions is not entitled to any deference and that our review should be *de novo* because Judge VandeWiele did not preside over any aspect of the case. See *Toland v. Davis*, 295 Ill. App. 3d 652, 657, 693 N.E.2d 1196 (1998). We reject this argument. In *Toland*, this court held that where the order was entered by a judge who neither presided over any pertinent aspect of the case nor conducted an evidentiary hearing on the motion for sanctions, his decision was based on the same "cold record" as that before the appellate panel and review should be *de novo*. Judge Vandewiele held a hearing on pending motions.

■ Generally, a trial court's decision regarding whether to impose sanctions is within the sound discretion of the trial court, is entitled to considerable deference, and will not be reversed on appeal absent an abuse of discretion. *Yassin v. Certified Grocers of Illinois, Inc.*, 133 Ill. 2d 458, 551 N.E.2d 1319 (1990). However, the logical predicate to such deference is that the circuit court make and the appellate court be able to discern an informed and reasoned decision.

There is a split of authority among the districts of the appellate court reflecting some confusion over when the circuit court is obligated to make written findings of fact in ruling on a motion for sanctions. Compare *In re Estate of Smith*, 201 Ill. App. 3d 1005, 559 N.E.2d 571 (3d Dist. 1990), and *O'Brien & Associates, P.C. v. Tim Thompson, Inc.*, 274 Ill. App. 3d 472, 653 N.E.2d 956 (2d Dist. 1995) (holding that written findings of fact are required even where sanctions are denied),

with *Rein v. David A. Noyes & Co.*, 271 Ill. App. 3d 768, 649 N.E.2d 64 (2d Dist. 1995), and *Elledge v. Reichert*, 250 Ill. App. 3d 1055, 620 N.E.2d 543 (4th Dist. 1993) (if sanctions are not imposed, the trial court need not provide reasons for its denial).

Inasmuch as the slide down the slippery slope appears to have begun with this court's 1990 decision in *In re Smith*, we begin our analysis with that case. *Smith* involved a situation substantively similar to the case at bar, in that sanctions were sought for an alleged failure to properly respond to discovery. The decision required an analysis of the original sanctions statute, which had been in effect during a portion of the litigation in the circuit court (Ill. Rev. Stat. 1987, ch. 110, par. 2—611); the recently enacted Supreme Court Rule 137 (134 Ill. 2d R. 137) (effective August 1, 1989), which had superseded the statute (see 134 Ill. 2d R. 137, Committee Comments); and Supreme Court Rule 219 (134 Ill. 2d R. 219), which provided for discovery sanctions (134 Ill. 2d R. 219(b)). The *Smith* court was faced with a dilemma. While section 2—611 was completely silent on the need for written findings, Rule 137 mandated them, but only if sanctions were imposed. By contrast, Rule 219(b) mandated the imposition of sanctions upon the denial of a request to admit the genuineness of a document or the truth of a fact that is thereafter proven to be genuine or true, unless "the court finds that there were good reasons for the denial or that the admissions sought were of no substantial importance." 134 Ill. 2d R. 219(b).

In the face of these competing requirements, and being unable to ascertain from the record whether an evidentiary hearing had been held and whether the circuit court's decision was or was not an abuse of discretion, this court remanded for an evidentiary hearing and specific findings of fact.

■ Because the relevant statute and rules have changed, we find the legal analysis in *Smith* is no longer valid. We do, however, believe that the appellate court has a duty in assessing whether there has been an abuse of discretion to ascertain whether there was a legitimate factual basis for the sanctions decision. Fulfillment of this duty may require a remand for the development of a more enlightening record, which may or may not include express findings of fact. Accordingly, to the extent that *Smith* held that the predicate to the appellate court's deference to the circuit court's sanction decision is grounded in a determination that it was informed and reasoned, we think *Smith* was correctly decided. We reject, however, any suggestion in *Smith* that trial courts *must* make findings of fact whether they impose or deny a motion for sanctions.

■ Turning to the case at bar, we note first that the plain language

of Supreme Court Rule 137 only requires the circuit court to make written findings "[w]here a sanction *is imposed* under this rule." (Emphasis added.) 134 Ill. 2d R. 137. We find no authority in this rule for defendant Van Acker's claim that written findings are mandated even where sanctions are denied. The fact that the court made no findings of fact does not, standing alone, justify reversal and remand.

■ We look to the record to determine whether it sheds enough light on the basis for the court's decision denying sanctions to permit us to determine whether there was an adequate *basis* for the court's decision or whether it was an abuse of discretion. The order does not help us in that regard since it states only the conclusion that: "Plaintiff had a good faith basis to initiate and proceed with the litigation and that plaintiff acted reasonably and in good faith under the circumstances," without disclosing any of the court's underlying reasoning.

We, therefore, focus our attention on the transcript of the hearing on the various pending motions, including the motion for sanctions, because this provides us with the only other potential source of the court's thinking. Our review is undertaken without benefit of direction by defendant Van Acker to anything in the transcript or elsewhere in the record that he believes to be evidence of an abuse of discretion. Nor did we find any such evidence on our own. The only substantive statement made by the court during the hearing was to allow certain testimony, which it acknowledged would be inadmissible at trial, because, "I want some general background to how he feels he had a good faith basis to proceed with the lawsuit in that regard [conversion issue]." We have found nothing in the record to lead us to conclude that the court's decision, reached after hearing all of the evidence and reviewing the case file, was an abuse of discretion.

We, therefore, affirm the denial of defendant Van Acker's motion for sanctions.

### III. Motion to Deem Facts Admitted

Finally, defendant Van Acker's last claim involves his request for admission of certain facts, and, because plaintiff never denied them, defendant Van Acker argues that they stand admitted under Supreme Court Rule 216(c) (134 Ill. 2d R. 216(c)).

■ In general, under Supreme Court Rule 216 (134 Ill. 2d R. 216), if a party fails to respond properly or object to a request to admit facts within 28 days of service of the request, the facts requested to be admitted therein are admitted. *Deboe v. Flick*, 172 Ill. App. 3d 673, 526 N.E.2d 913 (1988). However, this rule is not to be applied automatically whenever a party fails to admit or deny a request to admit facts. Supreme Court Rule 216 states, in relevant part:

"(c) Admission in the Absence of Denial. Each of the matters of fact and the genuineness of each document of which admission is requested is admitted unless, within 28 days after service thereof, the party to whom the request is directed serves upon the party requesting the admission either (1) a sworn statement denying specifically the matters of which admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters or (2) written objections on the ground that some or all of the requested admissions are privileged or irrelevant or that the request is otherwise improper in whole or in part." 134 Ill. 2d R. 216(c).

A circuit court has wide discretion with regard to the requests to admit. *Sims v. City of Alton*, 172 Ill. App. 3d 694, 526 N.E.2d 931 (1988).

 We find that plaintiff conformed its response to the requirements of Rule 216. Mr. Peterson, one of the Turner Investors' partners, signed the response to the request to admit facts, in which plaintiff set forth in detail the reasons why it could neither admit nor deny the requests in question.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court granting summary judgment in favor of defendants and against plaintiff is affirmed. The order denying the motion for sanctions and the motion to deem facts admitted is also affirmed.

Affirmed.

SLATER and SCHMIDT, JJ., concur.